UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRICE CORINA SANCHEZ, | No. 2:15-cv-1370-EFB |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons that follow, plaintiff's motion for summary judgment is granted; the Commissioner's motion is denied; and the matter is remanded for further proceedings.

I.  BACKGROUND

Plaintiff filed application for a period of disability and DIB, alleging that she had been disabled since January 10, 2010. Administrative Record ("AR") 157-163. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 106-110, 115-119. On November 5, 2014, a hearing was held before administrative law judge ("ALJ") Carol A. Eckersen. *Id.* at 36-84.

Plaintiff was represented by counsel at the hearing, at which she and a vocational expert testified. *Id.*

On January 9, 2015, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 20-30. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.

2. The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).

\* \* \*

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. The claimant has the following severe impairments: degenerative joint disease of the left shoulder, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine and degenerative disc disease of the thoracic spine (20 CFR 404.1520(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally reach overhead with the left extremity.

\* \* \*

6. The claimant is capable of performing past relevant work as an administrative clerk (DOT# 219.362-010) and receptionist (DOT# 237.367-038). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\* \* \*

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision (20 CFR 404.1520(f)).

*Id.* at 22-30.

Plaintiff's request for Appeals Council review was denied on May 11, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    ANALYSIS

Plaintiff argues that the ALJ erred in (1) weighing the medical evidence of record, (2) discrediting her subjective complaints, (3) assessing her RCF, and (4) relying on the vocational expert's testimony to find that she was not disabled. ECF No. 11-1 at 17-28.

A.    The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff argues that the ALJ erred in rejecting opinions from her treating and examining physicians. ECF No. 11 at 18-29. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d

1  747, 751 (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical
2  findings as a treating physician, but differs only in his or her conclusions, the conclusions of the
3  examining physician are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.
4  2007).

5        The record contains several opinions from treating physicians.  Dr. Carl Shin, a treating
6  physician, diagnosed plaintiff with costochondritis, left-sided neck and shoulder pain, left anterior
7  thigh pain, and low back pain.  AR 251.  He found that plaintiff had a near full range of motion of
8  the cervical spine, but pain with left lateral rotation and bending.  *Id*. at 250.  Plaintiff had
9  palpatory tenderness around the shoulder complex and impingement maneuvers increased her
10 pain.  *Id*.  Dr. Shin opined that plaintiff could lift 10 pounds frequently, 20 pounds occasionally,
11 and no more than 30 pounds; stand and/or walk for less than 8 hours, but more than 6 in an 8-hour
12 day; sit for less than 8 hours, but more than 6 in an 8-hour day; and was limited in pushing and
13 pulling.  *Id*. at 254.  He further opined that plaintiff could occasionally climb, crawl, reach, and
14 handle.  *Id*.

15       Dr. Merrill Douglas, also a treating physician, determined that plaintiff had a chest wall
16 strain and a possible mild left shoulder girdle.  *Id*. at 337.  She further stated that plaintiff may
17 have incurred a small disk herniation, and probably has myofascial pain that is exacerbated by
18 lifting.  *Id*.  She opined that plaintiff could return to "full duty" work so long as she was allowed
19 to stretch and ice for 5 minutes every half hour, be allowed to sit or stand at her discretion, lift
20 less than 5 pounds, and perform no heavy pushing or pulling.  *Id*. at 338.

21       Plaintiff also received treatment from Dr. Arash Nassim for chest pain along left costal
22 margin.  *Id*. at 754.  Dr. Nassim opined that this impairment would require plaintiff to take a 15
23 minute break every hour and miss at least three days of work in a month.

24       Plaintiff's medical records were reviewed by Dr. H. Jone, a non-examining physician,
25 who opined that plaintiff could lift 50 pounds occasionally and 25 pounds frequently; walk and/or
26 stand about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and was
27 unlimited in pushing and pulling, except she was limited in reaching overhead.  *Id*. at 90.
28 /////

Plaintiff's records were also reviewed by Dr. J.R. Saphir, who opined that plaintiff could lift 20 pounds occasionally and 10 pounds frequently; walk and/or stand about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; was unlimited in pushing and pulling, except she was limited in reaching overhead. *Id.* 101-102.

Plaintiff first contends that the ALJ erred by failing to provide sufficient reasons for rejecting Dr. Shin's opinion that plaintiff was limited to occasionally reaching. ECF No. 11-1 at 18. Plaintiff contends that while the ALJ gave significant weight to Dr. Shin's opinion that plaintiff was limited in reaching with his left arm and Drs. Jone and Saphir's opinion that plaintiff was limited to reach overhead with the same extremity, but he "never explained how he resolved the conflict between their opinions in regards to reaching overhead or in all directions." *Id.*

Dr. Shin provided his opinion regarding plaintiff's functional limitations on a check-the-box form, and did not provide a narrative qualifying or explaining his opinion that plaintiff was limited in reaching. *See* AR 254. The ALJ gave significant weight to Dr. Shin's opinion, but did explicitly state that he was rejecting his opinion that plaintiff had general limitations in reaching. *Id.* at 29. However, the ALJ provided a lengthy and detailed explanation for the finding that plaintiff's reaching limitations only impacted her ability to reach overhead. *Id.* at 27-29.

As observed by the ALJ, x-ray studies of plaintiff's left shoulder were normal. *Id.* at 302 ("The shoulder x-rays were normal."). An MRI scan showed mild rotator cuff tendonitis. *Id.* at 237-238, 681. In May 2009, plaintiff sought treatment for left shoulder pain. *Id.* at 298. She had tenderness to palpation with a full range of motion in her shoulder, and was diagnosed with rotator cuff impingement and treated with a cortisone injection. *Id.* In February 2010, Dr. Shin found that plaintiff had near full range of motion in her left shoulder and impingement maneuvers appeared negative. *Id.* at 279. In July 2010, plaintiff reported that her left shoulder did not cause her pain, (*id.* at 261), and in September plaintiff reported that her left shoulder pain was "not too bad," (*id* at 257).

The ALJ also noted that plaintiff complained of worsening shoulder pain in October 2010, but then reported only minimal shoulder tenderness in December 2010. *Id.* at 245, 248.

/////

Treatment notes from July 2011 indicated that plaintiff was encouraged to engage in light exercise and "accept her pain." *Id*. at 237, 736.  In October 2013, her treating physician told her that she needs to learn to "cope with the chronic pain" and "push herself to exercise everyday and go about her normal activities so that her upper extremity and axillary area get used to the activity and do not become so sensitive to discomfort or pain." *Id*. at 698.  The ALJ specifically found that the "fact that the [plaintiff's] treating physicians repeatedly encouraged her to participate in increase activities supports a finding that the claimant can occasionally lift overhead, and lift and carry at least light weights." *Id*. at 27.

Thus, to the extent Dr. Shin opined that plaintiff was limited in reaching in all directions, and not just overhead, the ALJ fully explained why the objective medical evidence of record only warranted a limitation to reaching overhead.  Accordingly, the ALJ adequately considered Dr. Shin's opinion and fully explained why this limited portion of his opinion was discounted.

Plaintiff also contends that the ALJ failed to give sufficient reasons for rejecting Dr. Nassim's opinion that plaintiff would require a 15 minute break every hour and miss at least three days of work in a month.  ECF No. 11-1 at 19.  The ALJ gave little weight to this opinion, finding that it was inconsistent with minimal image study findings of plaintiff's spine, her positive response to conservative care, and clinical findings evidencing normal gain and intact neurological findings.  *Id*. at 28.

Plaintiff does not contend that reasons provided by the ALJ are legally deficient.  Rather, plaintiff contends that the reasons are not supported by substantial evidence because the ALJ failed to consider an x-ray of plaintiff's rib and clinical findings from a May 19, 2014 treatment note "that revealed she continued to have severe pain over the left lateral ribs."  ECF No. 11-1. The evidence cited by plaintiff does not support Dr. Nassim's opinion.  The x-ray report noted that plaintiff complained of pain in her left rib, but the results showed no fracture, lytic or blastic process in the left rib.  AR 717.  Thus, this imaging report fails to show any impairment that would require her to take rest breaks.  As for the treatment note, it reflected that plaintiff continued to complain of left rib pain with an unknown etiology.  *Id*. at 714.  However, it also
/////

1    stated that plaintiff's medications were providing pain relief. *Id*. Thus, this evidence also does

2    not support Dr. Nassim's opinion that plaintiff would require frequent breaks.

3        Accordingly, plaintiff has failed to show that the ALJ erred in rejecting opinions from her

4    treating physicians.

5        B.    <u>The ALJ Failed to Provide Sufficient Reasons for Her Credibility Finding</u>

6        Plaintiff contends that the ALJ erred by failing to set forth clear and convincing reasons

7    for discrediting her subjective complaints.

8        In evaluating whether subjective complaints are credible, the ALJ should first consider

9    objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341,

10   344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may

11   then consider the nature of the symptoms alleged, including aggravating factors, medication,

12   treatment and functional restrictions. *See id*. at 345-347. The ALJ also may consider: (1) the

13   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

14   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

15   prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284.

16   Work records, physician and third party testimony about nature, severity and effect of symptoms,

17   and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec.*

18   *Admin*., 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly

19   debilitating medical problem may be a valid consideration by the ALJ in determining whether the

20   alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of*

21   *HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own

22   observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

23   substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).

24   "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

25   reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d

26   at 599.

27       The ALJ found that plaintiff's allegations of debilitating pain were not fully credible

28   because she received only conservative care, which was generally effective in managing

plaintiff's symptoms. AR 25-27. She also concluded that plaintiff's allegations were not fully supported by the medical evidence of record. *Id*.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severe impairments." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). Further, [i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Medical records from 2009 indicate that plaintiff sought treatment for back pain, which was treated with ibuprofen, Flexeril, and Gabapentin. AR 306-310. Between May and July 2010, plaintiff received steroid injections for her cervical spine and shoulder complaints, but she reported little relief. *Id*. at 261, 265. She continued to take Flexeril and Motrin, and was referred for acupuncture. *Id*. at 259-267. In September, she reported that acupuncture provided only transient relief, but indicated she was not experiencing much shoulder pain. *Id*. at 258. Norco was added to her medication regiment. *Id*. at 257-258.

In October, plaintiff reported that acupuncture was improving her chest pain, *id*. at 248, but the following month she experienced "quite a bit" of shoulder and chest pain. *Id*. at 245. She was switched from Norco to Vicodin, due to stomach irritation. *Id*. at 245-246. From January through May 2011, plaintiff continued to report persistent pain in her back, neck, and shoulder, which was treated with Vicodin, Motrin, and Flexeril. *Id*. at 239-244. In July she reported "doing fairly well," but continued to have "pain in the neck, radiating to the left shoulder and some low back pain." *Id*. at 237.

In July 2013, plaintiff continued to experience chest, shoulder, and neck pain, which was again treated with narcotic pain medication and a muscle relaxer. *Id*. at 743. Her pain persisted into 2014, and she continued to be prescribed Vicodin. *Id*. at 712-14, 732. In April 2014, plaintiff reported a 70 to 80 percent relief with her current regimen. *Id*. at 715. However, a few months later she was referred to a pain management specialist for a second opinion. *Id*. at 729-734. She reported worsening of symptoms and persistent back and neck pain, and the evaluating
/////

1  physician concluded that plaintiff would benefit from low dose opioids, such as a Butrans patch.
2  *Id*. at 729.

3  Contrary to the ALJ's findings, the record does not indicate that plaintiff's pain symptoms
4  were well managed with conservative treatment. Plaintiff received multiple steroid injunction,
5  which provided little to no relief. The record also shows that she was treated extensively with
6  narcotic pain medication and muscle relaxers. Such treatment is not conservative. *Ardito v.*
7  *Astrue*, 2011 WL 2174891, at *4 (C.D. Cal. June 3, 2011) (finding narcotic prescriptions and
8  muscle relaxers to be anything but conservative treatment); *Shepard v. Colvin*, 2015 WL
9  9490094, at *7 (E.D. Cal. 2015) (narcotics are not conservative treatment); *Brunkalla-Saspa v.*
10 *Colvin*, 2014 WL 1095958, at *1 (C.D. Cal. March 18, 2014) ("[T]he ALJ found that Plaintiff had
11 been conservatively treated with Vicodin . . . . But Vicodin qualifies as strong medication to
12 alleviate pain") (citations and quotations omitted); *Harrison v. Astrue*, 2012 WL 527419, at *7
13 (D. Or. Feb. 16, 2012) (nerve blocks and multiple steroid injections "certainly not conservative").
14 Nor was it successful. Those treatments met with only limited results and a prognosis that
15 plaintiff would have to learn to "cope with the chronic pain." AR 261, 265, 698.

16 Further, the ALJ's finding that plaintiff's symptoms were well managed is not supported
17 by substantial evidence. In reaching this conclusion, the ALJ relied heavily on only a few
18 medical records without full consideration of the entire record, which evidences a significant
19 struggle to manage plaintiff's pain. The ALJ highlighted the medical records containing
20 plaintiff's reports that she was "doing fairly well" and obtained relief from acupuncture, without
21 regard to the majority of records demonstrating that plaintiff experienced persistent pain.
22 Significantly, at three different parts of the decision the ALJ cited and discussed plaintiff's April
23 2014 report that that she experienced 70 to 80 percent relief with her current regimen, but made
24 no mention that a few months later a pain specialist recommend plaintiff be treated with opioids
25 for her worsening pain. *See* AR 25-27.

26 Thus, the ALJ relied heavily on the records that showed a temporary reduction in
27 plaintiff's symptoms. However, "[o]ccasional symptom-free periods—and even the sporadic
28 ability to work—are not inconsistent with disability." *Lester*, 81 F.3d at 833. Accordingly, the

ALJ's finding that plaintiff's impairments were well managed with conservative treatment is not supported by substantial evidence.

The only other reason provided for discounting plaintiff's credibility was that her allegations were inconsistent with the medical evidence of record. AR 26. Although the ALJ may rely on an inconsistency with medical evidence in assessing plaintiff's credibility, that may not be the sole basis for his credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Thus, even assuming that substantial evidence supports the ALJ's finding that plaintiff's allegations are inconsistent with the medical evidence of record, the court cannot sustain the credibility finding on this basis alone.

Accordingly, the case must be remanded for further proceedings.[2] *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").

IV.   CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: September 30, 2016.

*[signature]*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[2] Because the case must be remanded for further consideration, the court declines to address plaintiff's additional argument.